# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RAM K. TRIPATHI,
  Appellant,

  v.

NATIONAL AERONAUTICS AND
  SPACE ADMINISTRATION,
  Agency.

DOCKET NUMBER
DC-0432-14-0612-I-1

DATE: July 28, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Laura A. O'Reilly, Virginia Beach, Virginia, for the appellant.

Charles A. Polen, Esquire, Hampton, Virginia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2        The agency removed the appellant from the GS-15 position of Research Physicist based on a charge of unacceptable performance.  Initial Appeal File (IAF), Tab 4 at 17, 18, Tab 7 at 11.  Specifically, the agency charged that the appellant's performance in critical element[2] 2 (CE-2) of his performance standards, Nuclear Fragmentation Code Comparison (NUCFRG), was unacceptable.  IAF, Tab 7 at 12.  The notice indicated that, during the performance improvement plan (PIP) period, the overall expectations were lowered since the work to be accomplished during the PIP did not include comparison of NUCFRG3 to other codes, as was required in the original performance standard.  *Id*.  Nonetheless, the agency charged that the appellant failed to achieve minimally successful performance during the PIP period.  *Id*.

¶3        The appellant appealed the agency's action, alleging that his performance was not unacceptable and that the agency discriminated against him on the basis of his age.  IAF, Tab 1.  Although the appellant initially requested a hearing, during proceedings before the administrative judge, he withdrew that request.

---

[2] Title 5 C.F.R. § 432.103(b) defines "critical element" as "a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable."

IAF, Tab 10. Based on the written record, the administrative judge affirmed the appellant's removal. IAF, Tab 19, Initial Decision (ID). She found that the agency took its action under a performance appraisal system approved by the Office of Personnel Management (OPM). ID at 6. She also found that the performance standards at issue were valid. ID at 7-8. As to the validity of the standards, she noted the appellant's objections to the inclusion of CE-2 in his performance plan because he did not have the skills to perform that activity. ID at 7. She found, however, that the fact that the appellant objected to elements of his performance plan or considered them difficult did not make them invalid. *Id.*

¶4      The administrative judge also found that the agency provided the appellant with a reasonable opportunity to improve during the PIP period by reducing the initially required tasks under CE-2 and providing the appellant the periodic assistance of colleagues to help him achieve the goals established by the PIP. ID at 8-11. She found that the agency established that, of the five tasks assigned during the PIP, the appellant met the minimally successful level for items numbered 1, 2, and 3, but failed to meet the minimally successful level respecting items numbered 4 (report results in journal article or peer reviewed engineering report or similar publication that, among other things, demonstrates how the results were obtained) and 5 (provide report results according to a definite schedule, with final report due on September 2, 2013). IAF, Tab 7 at 179; ID at 11. She found that the agency proved by substantial evidence that the appellant did not successfully complete the PIP, and therefore it met its burden to prove that the appellant's performance of CE-2 of his performance standards was unacceptable. ID at 14.

¶5      The administrative judge also found that the appellant did not prove that the agency discriminated against him on the basis of age. ID at 14-21. She found that the appellant's evidence that 11 other employees who were given a notice of proposed removal for poor performance or misconduct since January 1, 2009, were all over the age of 50 does not constitute preponderant evidence that the

agency discriminated by age. ID at 19. She found additionally that, even if the appellant's supervisor suggested that the appellant consider retirement, such a statement does not show that the suggestion was due to the appellant's age. ID at 19-21.

¶6 In his petition for review, the appellant disagrees with the administrative judge's findings of fact and conclusions of law. He asserts that she erred when she found that the performance plan and standards were valid; erred when she ruled that the PIP provided the appellant a reasonable opportunity to demonstrate acceptable performance; erred when she found that the appellant's performance was unacceptable; and erred when she found that there was no age discrimination. Petition for Review (PFR) File, Tab 1.

¶7 To sustain an action for unacceptable performance under chapter 43, the agency must demonstrate by substantial evidence, i.e., "the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other persons might disagree," 5 C.F.R. § 1201.56(a)(1)(i), (c)(1), that: 1) the removal was effected under a performance appraisal system approved by OPM; 2) the performance standards are valid; 3) the employee was provided with a reasonable opportunity to demonstrate acceptable performance; and 4) the employee's performance was unacceptable in at least one critical element. *See* 5 U.S.C. §§ 4302(b), 4303(a), 7701(c)(1)(A); *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶ 7 (2001). As noted, the appellant argues that the administrative judge erred in finding that the agency demonstrated items 2), 3), and 4).

¶8 As to item 2), the appellant asserts that the standard is invalid because he objected to it when it was added to his performance standards, but the agency nonetheless included it in his performance standards. It appears that the appellant is claiming that the agency erred in not providing him with an opportunity to participate in the establishment of the performance standards for his position. Under 5 U.S.C. § 4302(a)(2), agencies shall develop performance appraisal

systems which encourage employee participation in establishing performance standards. However, 5 U.S.C. § 4302(a)(2) does not create any substantive right for each employee to have an actual opportunity to participate in the development of performance standards, and there is no statutory or regulatory requirement that each employee have an actual opportunity to participate in the development of his or her performance standards. We cannot interpret 5 U.S.C. § 4302(a)(2) as requiring that the agency offer the appellant an opportunity to participate in the development of established standards prior to taking an action for unacceptable performance under chapter 43. Therefore, we find that the appellant fails to show any error in this regard.

¶9      The appellant also asserts that the agency's performance appraisal system is invalid because it did not define minimally acceptable performance. Performance standards are not valid if they do not set forth the minimum level of performance that an employee must achieve to avoid removal for unacceptable performance under chapter 43. *Eibel v. Department of the Navy*, 857 F.2d 1439, 1441–44 (Fed. Cir. 1988).

¶10     Agency performance appraisal systems may include between two and five summary rating levels. 5 C.F.R. § 430.208(d). Under any performance appraisal system, the lowest rating level is "unacceptable," which is the only rating that will support removal under chapter 43. *Jackson–Francis v. Office of Government Ethics*, 103 M.S.P.R. 183, ¶ 6 (2006); *Stenmark v. Department of Transportation*, 59 M.S.P.R. 462, 468 (1993); *see* 5 U.S.C. § 4302(b)(6); 5 C.F.R. §§ 430.206(b)(8), 430.207(c), 430.208(d). Under certain performance appraisal systems, performance of a critical element may fall between "fully successful" and "unacceptable." 5 C.F.R. §§ 430.207(c), 430.208(d); *see Jackson–Francis*, 103 M.S.P.R. 183, ¶ 6. If an agency adopts such a performance appraisal system, an appellant's performance could be "not satisfactory" without falling to the level that would support removal. 5 C.F.R. §§ 430.207(c)–(d), 430.208(d); *see Jackson–Francis*, 103 M.S.P.R. 183, ¶ 6.

¶11      Here the agency's Performance Plan sets forth each critical element but does not define the level of performance for each element as part of the Plan, defining only the meets expectations and significantly exceeds expectations levels.  IAF, Tab 7 at 186-90.  While the agency's performance standards were not sufficiently precise as to the minimally satisfactory level of performance, the PIP identified specific tasks with such detail that, when read in conjunction with the performance standards, the appellant was apprised of the tasks he was required to perform to meet the minimally successful level of performance.  *Diprizio*, 88 M.S.P.R. 73, ¶¶ 10–11.  Even if the performance standards lacked specificity, the agency provided the appellant with clear guidance of what was expected of him during the PIP.  IAF, Tab 7 at 177.

¶12      As to item 3), the appellant asserts that the agency failed to give him a reasonable opportunity to improve.  Before initiating an action for unacceptable performance under 5 U.S.C. § 4303, an agency must give the employee a reasonable opportunity to demonstrate acceptable performance.  *Greer v. Department of the Army*, 79 M.S.P.R. 477, 480 (1998).  OPM's regulations governing performance-based actions under 5 U.S.C. § 4303 state, "[a]s part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance."  5 C.F.R. § 432.104; *see Gjersvold v. Department of the Treasury*, 68 M.S.P.R. 331, 336 (1995).  The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions.  *Sandland v. General Services Administration*, 23 M.S.P.R. 583, 590 (1984).  In determining whether the agency has afforded the appellant a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the appellant's position, the performance deficiencies involved, and the amount of time that is sufficient to enable the employee to demonstrate acceptable performance.  *Satlin v. Department of Veterans Affairs*, 60 M.S.P.R. 218, 225 (1993) (finding that the

administrative judge properly considered the appellant's length of service and experience in concluding that the appellant had received both adequate instruction and time in which to demonstrate improvement).

¶13 CE-2 required that the appellant compare NUCFRG3 and Quantum Multiple Scattering Fragmentation Model (QMSFRG) to other nuclear physics codes, compare to experiment, and report results in a journal article or peer-reviewed engineering report or similar publication. IAF, Tab 7 at 178. However, during the PIP, the appellant was required to compare only NUCFRG3 to other nuclear physics codes. *Id*. The appellant states that he was "far removed" from the NUCFRG3 project, having worked 18 years earlier on NUCFRG2, and he did not have the tools that he needed for the project. He states that he had to obtain these tools from other researchers to begin the project. *Id*. at 10. Only the first three of the five elements of the appellant's PIP required that he perform tasks relevant to the provision of CE-2 that he "Compare NUCFRG3 to other nuclear physics codes." *Id*. at 178-79. The agency found that the appellant met the minimally satisfactory level regarding these three elements. *Id*. at 26. Because the appellant met the minimally satisfactory level regarding these elements, we find that he was given a reasonable opportunity to improve as to them.

¶14 Elements numbered 4 and 5 of the PIP, the elements that the appellant failed, required that he report the results of his NUCFRG3 comparison data in a journal article or peer-reviewed engineering report or similar publication on a specific time schedule. *Id*. at 179. To achieve the minimally successful level the agency provided that the appellant and his supervisor would work closely together and discuss the assignments if he needed any clarification. *Id*. at 178. Further, they would meet weekly for an hour to discuss the PIP assignments and activities so that the appellant could demonstrate his progress and ask questions. *Id*. The appellant also was provided the periodic assistance of colleagues to help him achieve the goals established by the PIP. IAF, Tab 15 at 30. As the administrative judge found, the level of individualized attention from his

colleagues and attempts to help the appellant improve his performance constitute a sufficient level of individualized attention for his PIP under the law. 5 C.F.R. § 432.104) (as part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance).

¶15 The appellant also asserts that his performance under the PIP was at least minimally satisfactory. A performance standard may consist of more than one component, and an employee working under such a standard may be required to perform acceptably as to each of these components. *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 628 (1984). However, where, as here, an employee is removed under 5 U.S.C. § 4303 on the basis of fewer than all the components of a performance standard for a critical performance element, the agency must present substantial evidence that the employee's performance warranted an unacceptable rating on the performance element as a whole. *Id.* This evidence should demonstrate that the appellant knew or should have known the significance of the component at issue, in addition to demonstrating that his deficiencies were significant enough to justify the action taken. *Id.* at 629.

¶16 As noted, the appellant achieved the minimally successful level on elements numbered 1, 2, and 3 regarding comparing NUCFRG3 to other nuclear physics codes. However, the appellant failed to rebut the agency's evaluation that he did not meet the minimally successful level on elements numbered 4 and 5. Agency officials assessed that the documents that the appellant provided pursuant to element 4 were not well written and were not of the level of quality sufficient for publication. They determined that the documents contained little interpretation or discussion of results from the data upon which they relied with no real quantitative or qualitative conclusions. ID at 25. They also determined that the appellant failed to display an understanding of the functionality of the overall code or its subroutines. *Id.* They further determined that the appellant was unable to respond to the validity of the results for light ions, particularly as it

related to the subroutine called F2VALIDATION, in spite of the fact that the developer of the subroutine was available while he was performing the task to clarify its validity. Agency officials expected a researcher of the appellant's experience and grade level to have performed a more rigorous technical assessment. *Id*.

¶17 Regarding element 5, the agency agreed that the appellant met the deliverable dates for the journal article. However, meeting the minimally satisfactory level of performance on element 5 required more than meeting deliverable dates. Similar to element 4, it required developing a journal article with no more than typographical or minor grammatical errors, and specific content on each deliverable date. For instance, the first delivery had to include what data are available and what the appellant would use for code comparisons as well as justification for choosing the selected data and for omitting certain data. IAF, Tab 7 at 179. The appellant failed to rebut the agency evidence that, even after his colleagues, supervisors, and a subject-matter expert provided feedback, the required article that he submitted by the conclusion of the PIP was not clear, complete, or thorough, but consisted of unsubstantiated narrative lacking detail and technical depth, in other words, it was not of journal quality. *Id*. at 8. Under these circumstances, we agree with the administrative judge that the agency presented substantial evidence that the appellant's performance warranted an unacceptable rating on the performance element as a whole. *See Shuman*, 23 M.S.P.R. at 628.

¶18 In his petition for appeal, the appellant also challenged the agency's denial of his within-grade increase (WIGI). IAF, Tab 1. The administrative judge did not address the WIGI denial in the initial decision. In his petition for review, the appellant does not specifically allege that the administrative judge erred in failing to address his denial of WIGI claim; however, he does reference that denial twice. PFR File, Tab 1 at 14, 16. As explained below, we find that, to the extent that the administrative judge erred in failing to adjudicate the appellant's appeal of his

WIGI denial, the adjudicatory error was harmless. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶19 An employee is entitled to receive a WIGI in his or her rate of basic pay if he or she is performing at the "fully successful" level or better at the end of the statutory waiting period. 5 U.S.C. § 5335(a) (an employee is entitled to a periodic step increase so long as he or she has completed the applicable waiting period, has not received an equivalent increase in his or her rate of basic pay during the waiting period, and is performing at an acceptable level of competence); 5 C.F.R. § 531.404(a) (for purposes of granting or denying a WIGI, "acceptable level of competence" means "fully successful" or better). The agency must support its decision to withhold a WIGI by substantial evidence.

¶20 If an agency determines that an employee is not performing at an acceptable level of competence and withholds a WIGI, then the employee is entitled to "an opportunity for reconsideration . . . within his agency under uniform procedures prescribed by the Office of Personnel Management." 5 U.S.C. § 5335(c). "If the determination [to withhold the WIGI] is affirmed on reconsideration, the employee is entitled to appeal to the Merit Systems Protection Board." *Id*. Thus, the Board can exercise jurisdiction over an appeal from the withholding of a WIGI as an otherwise appealable action under chapter 53 only if the agency has affirmed its initial determination upon reconsideration or has unreasonably refused to act on a request for reconsideration. *Shaishaa v. Department of the Army*, 58 M.S.P.R. 450, 453 (1992).

¶21 Here, the agency denied the appellant's WIGI on the same day that it issued the decision to remove him for unacceptable performance. IAF, Tab 4 at 18, 23. The agency's final decision to withhold the appellant's WIGI indicates that the appellant sought reconsideration of the denial, and the deciding official found that the performance problems described in the initial WIGI denial were fully

supported. IAF, Tab 4 at 23. Therefore, he issued a final decision that the appellant's WIGI be withheld. *Id*. Under these circumstances, the Board has jurisdiction over the appellant's WIGI appeal. *Shaishaa*, 58 M.S.P.R. at 453. Because the agency has proven that the appellant's performance was less than fully successful in this removal appeal, we find that it also has established by substantial evidence that the appellant was not entitled to receive a WIGI in his rate of basic pay, and we affirm the agency's action.

¶22    Finally, the appellant contends that the administrative judge erred in finding that he failed to prove his affirmative defense of age discrimination. In his petition for review, he reasserts the arguments that he made below. We agree with the administrative judge that the appellant's evidence is insufficient to meet his burden to prove by preponderant evidence that the agency's action constituted discrimination on the basis of age.

¶23    Under the Age Discrimination in Employment Act (ADEA), found at 29 U.S.C. § 633a(a), Federal sector employees can prove a violation merely by showing that age was a factor in the contested personnel action, even if it was not the "but for" cause. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 40 (2015). Given the statute's sweeping language, it is unnecessary to look for a particular quantum of influence, such as substantial evidence, but rather for the existence of any influence at all. *Id*. This is so because any amount of discrimination tainting a personnel action, even if not substantial, means that the action was not free from any discrimination based on age. *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 7 (2012).

¶24    An appellant may establish a violation of the ADEA using direct evidence or any of three types of circumstantial evidence: convincing mosaic, comparator, or pretext. *Savage*, 122 M.S.P.R. 612, ¶ 42. Direct evidence is evidence that can be interpreted as an acknowledgment of discriminatory intent. *Id*. The first kind of circumstantial evidence consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the

protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Id*. Considered together, such bits and pieces may compose a convincing mosaic of discrimination. *Id*. The second kind of circumstantial evidence is comparator evidence, consisting of evidence, whether or not rigorously statistical, that employees similarly situated to the appellant other than in the characteristic on which an agency is forbidden to base a difference in treatment received systematically better treatment. *Id*. The third kind consists of evidence that the agency's stated reason for its action is unworthy of belief, a mere pretext for discrimination. *Id*. None of the aforementioned types of evidence, i.e., direct, convincing mosaic, comparator, or pretext, will be needed in every case. *Id*. Each type of evidence is sufficient by itself to support a judgment for the appellant; or they can be used together. *Id*.

¶25    When an appellant asserts an affirmative defense of discrimination or retaliation under the ADEA, the Board first will inquire whether he has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 51. Such a showing is sufficient to establish that the agency violated the ADEA, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Savage*, 122 M.S.P.R. 612, ¶ 51. In making an initial showing, an appellant may rely on direct evidence or any of the three types of circumstantial evidence described above, either alone or in combination. *Id*. If the appellant meets that burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Id*. If we find that the agency has made that showing, its violation of the ADEA will not require reversal of the action. *Id*.

¶26    Here, the appellant attempted to prove his allegation of age discrimination with the first and second type of circumstantial evidence described above, i.e.,

ambiguous statements and comparator evidence. The appellant asserts that his supervisor made one or two comments to the appellant suggesting that he retire. IAF, Tab 1 at 6. He claims that, since January 1, 2009, 11 of 12 proposed removals were issued to employees who were over 50 years of age, and all of those over 50 were removed. He also claims that this evidence shows that the removals for conduct and performance of employees over the age of 50 are disproportionate. IAF, Tab 16.

¶27    We agree with the administrative judge that the appellant's evidence does not constitute preponderant evidence that his removal constituted discrimination on the basis of his age. As she found, the appellant's claim that his supervisor suggested that the appellant retire, even if true, does not show that the statement was due to the appellant's age, especially given the supervisor's denial that he made such a statement, the evidence that other older employees who continue working within the unit are past the eligibility age to retire, and the detailed performance-related reasons for the appellant's removal. ID at 20. As she also found, the examples of removals submitted by the appellant each cite specific reasons for removal that are independent of age, and the appellant's argument does not include other relevant information to support his assertion, such as the number of employees over 50 at the agency as a whole who were not presented with notices of removal. ID at 20-21. Further, a newspaper article submitted by the appellant stating that the agency is seeking younger employees suggests that its workforce is disproportionately older. ID at 19. Therefore, the Board will not disturb an administrative judge's findings when, as here, she considered the evidence as a whole and drew appropriate inferences. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105–06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). Accordingly, we affirm the administrative judge's initial decision.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you

must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.